EYDE BROTHERS DEVELOPMENT COMPANY v ROSCOMMON
COUNTY BOARD OF ROAD COMMISSIONERS

Docket No. 89101. Submitted February 11, 1987, at Grand Rapids.
Decided July 20, 1987. Leave to appeal applied for.

Eyde Brothers Development Company and Ernest C. Bebow and
Nancy L. Bebow filed suit in the Roscommon Circuit Court
against the Roscommon County Board of Road Commissioners,
Roscommon County, and the Roscommon County Board of
Commissioners. Denton Township was subsequently added as a
defendant. Plaintiffs sought to quiet title to portions of their
respective real properties located along the shore of Houghton
Lake in Denton Township, Roscommon County, and claimed
nuisance on the basis of alleged noise, loitering, littering and
trespass by members of the public which interfered with the
use of their properties. Both plaintiffs' properties abutted Lib-
erty Street. The Eyde Brothers' property also abutted Hough-
ton View Drive. Plaintiffs contended that offers to dedicate
property for public use as Liberty Street and Houghton View
Drive, made when their respective subdivisions were platted,
were never accepted by defendants and, as a consequence, those
streets remain privately owned. Defendants disputed this con-
tention and counterclaimed that Eyde Brothers had trespassed
by erecting a sea wall and fence along Liberty Street and
Houghton View Drive and that the Bebows had similarly
trespassed by erecting a sea wall along Liberty Street. Follow-
ing a bench trial, the court, Carl L. Horn, J., entered a
judgment denying relief on plaintiffs' claims, but granting relief
on defendant's counterclaim. Plaintiffs appealed.

The Court of Appeals held:

1. The trial court correctly found that the offer of property
for public use as Liberty Street had been informally accepted
by the local authorities. Public money was expended in the
construction of a drain and the paving of Liberty Street in

REFERENCES

Am Jur 2d, Dedication §§ 41-45.
Am Jur 2d, Nuisances §§ 5, 55.
Implied acceptance, by public use, of dedication of beach or shore-
line adjoining public waters. 24 LAR4th 294.

1962, and ever since then the occupation of the land has been continuous, open and notorious. The trial court, however, made no findings as to Houghton View Drive and a remand is necessary for a determination of whether Houghton View Drive has been properly dedicated to public use.

2. The trial court's findings with regard to plaintiffs' claim of nuisance were such that the Court of Appeals could not determine how factual issues were resolved or how nuisance principles were applied by the trial court. The Court of Appeals thus ordered a redetermination of plaintiffs' nuisance claim on remand.

Remanded.

1. DEDICATION — ACCEPTANCE — PUBLIC USE.

Land is not considered dedicated to the public unless the owner of the fee appropriates it to some public use and it is accepted for such use by or on behalf of the public.

2. DEDICATION — HIGHWAYS — ACCEPTANCE.

The offer to dedicate land contained in a plat for highway purposes may be accepted: (1) formally by resolution of a municipal authority; (2) informally through the expenditure of public money for repair, improvement and control of the roadway; or (3) informally through use by the public.

3. DEDICATION — HIGHWAYS — ACCEPTANCE.

The offer to dedicate land for public use as a highway is a continuing offer as long as the original proprietors or their assignees take no steps to withdraw the offer; the offer must be accepted within a reasonable time; what constitutes reasonable time is largely governed by the surrounding circumstances.

4. DEDICATION — HIGHWAYS — ACCEPTANCE.

It is not essential that every part of a highway should be worked in order to evidence the intention of the public authorities to accept and maintain the entire highway dedicated in a plat for use of the public.

5. NUISANCE — NUISANCE PER SE — NUISANCE IN FACT.

The distinction between a nuisance per se and a nuisance in fact is an evidentiary one; a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under all circumstances; a nuisance per se is established by proof of the act which created it and becomes a nuisance as a matter of law and at that point a defendant's liability is established; in contrast, a nuisance in fact is a nuisance by reason of circumstances and surroundings, and an act may be found to be a

nuisance in fact where its natural tendency is to create danger and inflict injury to persons or property; the existence of a nuisance in fact is a question for the trier of fact.

6. GOVERNMENTAL IMMUNITY — NUISANCE — INTENTIONAL NUISANCES — BURDEN OF PROOF.

Only intentionally created or continued nuisances in fact will overcome a defense of governmental immunity; to establish the necessary intent, a plaintiff must show that the defendant who created or continued the nuisance knew or must have known that harm to the plaintiff was substantially certain to follow as a result of the defendant's actions.

7. NUISANCE — EQUITY — ABATEMENT OF NUISANCES.

An equity court has the power to enjoin a nuisance; however, it is the policy of the courts to tailor the remedy to the problem and, where possible, to abate the nuisance without completely destroying legitimate activity.

*Reid, Reid, Perry, Lasky, Hollander & Chalmers, P.C.* (by *Joseph D. Reid* and *John R. Fifarek*), for plaintiffs.

*James R. Deamud,* for Roscommon County Board of Road Commissioners.

*Charles H. Miltner,* for Denton Township.

Before: R. M. MAHER, P.J., and SAWYER and R. L. TAHVONEN,* JJ.

PER CURIAM. Plaintiffs appeal as of right from a November 13, 1985, judgment of the Roscommon Circuit Court denying relief on plaintiffs' suit, which sought to quiet title to properties and claimed nuisance, but granting relief on defendants' counterclaim for trespass.

In 1927, the plat of Cedar Bluffs First Annex subdivision within Denton Township, County of Roscommon, was duly recorded. Cedar Bluffs First Annex lies on the south shore of Houghton Lake.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Platted at the eastern extremity of Cedar Bluffs First Annex is a portion of land designated as "Liberty Street" and ostensibly dedicated to public use. That portion of Liberty Street situated within Cedar Bluffs First Annex is thirty-three feet wide. It extends north to the lakeshore and south to the subdivision limits.

In 1944, the plat of Westfall Heights subdivision, also within Denton Township, County of Roscommon, was duly recorded. Westfall Heights subdivision lies on the south shore of Houghton Lake, immediately east of the Cedar Bluffs First Annex subdivision. Platted at the western extremity of Westfall Heights is a portion of land designated as Liberty Street. As in Cedar Bluffs First Annex, Liberty Street is thirty-three feet wide. It extends north to the lakeshore and south to the subdivision limits. The Westfall Heights plat also ostensibly dedicated Liberty Street to public use.

Taken together, the two parcels designated as Liberty Street are sixty-six feet wide. That portion of Liberty Street in dispute extends approximately 148 feet from Houghton View Drive, the first street south of the lakeshore, north to the lakeshore itself. The center portion of Liberty Street, approximately seventeen feet, was paved in 1962. To the east and west of the paved portion are sloped banks about twelve feet wide. The slope of those banks increases as Liberty Street drops toward the lakeshore. At the top of the banks are horizontal portions of Liberty Street, about twelve feet wide. Abutting the horizontal portion of Liberty Street on the west is a lot within Cedar Bluffs First Annex. Abutting the horizontal portion of Liberty Street on the east is a lot within Westfall Heights.

In 1973, plaintiffs Ernest C. Bebow and Nancy L. Bebow purchased the Westfall Heights lakefront

lot abutting Liberty Street. Some time after the Bebows purchased the property, they replaced an aging wooden sea wall with concrete. The new sea wall extends across the twelve-foot horizontal portion of Liberty Street, then slopes twelve feet toward the paved portion of Liberty Street, matching the contour of the banks of Liberty Street. It is not disputed that the new sea wall is in the location of the former sea wall. Defendants also concede that the Bebow sea wall provides some necessary protection for Liberty Street.

In 1978, plaintiff Eyde Brothers Development Company purchased lakefront lots 1 through 4 in the Cedar Bluffs subdivision. Those lots run north to Houghton Lake and south to Houghton View Drive. Lot number 1 abuts Liberty Street. In 1980, Eyde Brothers built a sea wall across the lakefront of their property in much the same manner as the Bebows. The Eyde Brothers sea wall extends across the twelve-foot, horizontal portion of Liberty Street then slopes twelve feet toward the paved portion of Liberty Street, matching the contour of the banks of Liberty Street. Unlike the Bebows, however, Eyde Brothers also constructed a fence along the eastern edge of the horizontal portion of Liberty Street in 1980. The effect of the fence is to enclose the west, twelve-foot, horizontal portion of Liberty Street within the Eyde Brothers property. The Eyde Brothers fence additionally turns along Houghton View Drive, enclosing 2.3 feet of that drive ostensibly dedicated to public use in the Cedar Bluffs First Annex plat.

On September 26, 1980, Eyde Brothers and the Bebows brought suit as plaintiffs against Roscommon County and other defendants under quiet-title and nuisance theories. The thrust of plaintiffs' claim under the quiet-title theory was that the Liberty Street and Houghton View Drive proper-

ties were never actually dedicated because they were not properly accepted by defendants. The thrust of plaintiffs' nuisance theory was that defendants were essentially the owners of an unsupervised and unmaintained park—a condition resulting in litter, noise and congestion which interfered with plaintiffs' use of their own properties.

Defendants answered on September 28, 1983, denying that Liberty Street had not been dedicated and denying that Liberty Street constituted a nuisance. Defendants also filed a counterclaim, alleging trespass on the part of Eyde Brothers in the construction of its fence and sea wall. Defendant Denton Township intervened in the suit by order of the circuit court dated October 23, 1984.

A bench trial was held in the circuit court on July 16 through 18, 1985. Proposed findings of fact were subsequently filed by both parties. On October 7, 1985, the circuit court entered its opinion in favor of defendants. The trial court held that five factors supported its conclusion that there was acceptance by defendants and therefore a proper dedication of Liberty Street: (1) there was acceptance under the "McNitt Act," 1931 PA 130, repealed, 1951 PA 51, § 2, repealed 1969 PA 319, § 297, with continued foot changes submitted by the county to the state; (2) there was use by the public of the entire width of Liberty Street; (3) public funds were used to construct a paved roadway on Liberty Street; (4) public funds were used to install a drain; and (5) Denton Township established a dock ordinance regulating the use and placing of docks at the foot of public streets in the township. The trial court further held that there was no evidence to indicate abandonment of Liberty Street by the public.

Regarding plaintiffs' nuisance theory, the trial court found that the actions by the public in using

Liberty Street were not so outrageous as to require
a closing of the street. The court did note that
there had been occasions, particularly on summer
weekends, when the public had engaged in activi-
ties constituting a nuisance. However, the trial
court held that it did not have authority to close
Liberty Street, even if the nuisance had been
continuous and outrageous. The trial court instead
encouraged plaintiffs to contact defendants when
such behavior occurred so that existing laws and
ordinances could be enforced. Finally, the trial
court held that any money damages for the nui-
sance previously created would be speculative.

Regarding defendants' counterclaim, the trial
court found that there had been a trespass by
Eyde Brothers. The trial court ordered Eyde
Brothers to remove their fence extending along
Liberty Street and remove that portion of their sea
wall extending across Liberty Street. The trial
court made no findings regarding that portion of
Eyde Brothers' fence extending along Houghton
View Drive.

I

THE FEE INTEREST IN THE DISPUTED PROPERTY

On appeal, plaintiffs argue that the trial court
erred in holding that there was a proper dedica-
tion of Liberty Street and that title to the property
has therefore vested in the county or township.
According to plaintiffs, dedication requires both an
offer, submitted by properly recording the plat,
and an acceptance by formal action or by under-
taking repairs or improvements, by the public.
Plaintiffs submit that there was no formal accep-
tance by defendants nor was there an informal
acceptance within a reasonable time. Thus, plain-
tiffs argue that Liberty Street continues to be

privately owned, although plaintiffs' briefs and pleadings do not specify by whom Liberty Street is owned. Under this theory, plaintiffs suggested at oral argument that the property might revert to the abutting landowners. Alternatively, plaintiffs argue that if there was an acceptance by defendants, it was informal and therefore limited to the improved or paved portion of Liberty Street.

Our analysis of the question of the ownership of Liberty Street leads us first to the express language of the plat act at the time that Cedar Bluffs First Annex and Westfall Heights plats were recorded. In 1927, when the plat of Cedar Bluffs First Annex was recorded, Michigan's plat act provided:

> The [plat] map so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be herein designated for public uses in the city or villages within the incorporate limits of which the land platted is included, or if not included within the limits of any incorporated city or village, then in the township within the limits of which it is included in trust to and for the uses and purposes therein designated, and for no other use or purpose whatever. [1925 PA 360.]

When the Westfall Heights plat was recorded, Michigan's plat act contained nearly identical language:

> The plat so made and recorded in compliance with the provisions of this act shall be deemed a sufficient conveyance to vest the fee of such parcels of land as may be herein designated for public use in the municipality within the limits of which the land platted is included, in trust to and for the uses and purposes therein designated and for no other use or purpose whatever. [1929 PA 172,

repealed 1967 PA 288, § 292. MCL 560.292; MSA 26.430(292).][1]

It should be noted that Michigan's plat act did not use the word "dedication" nor did it refer to any process of acceptance by the municipality. Instead, the transfer of the fee in lands dedicated for public use is apparently complete upon a proper recording of the plat. Here it is not disputed that Liberty Street and Houghton View Drive were designated as public property in the plats. Nor is it disputed that the plats were properly recorded. Thus, looking only to the plat act, we would quickly conclude that the fee to these parcels has been vested in the public since the recording of the plats. However, that result is somewhat modified by the interpretive case law.

In *Wayne Co v Miller,* 31 Mich 447, 448-449 (1875), Justice COOLEY explained that the filing of a plat does not necessarily transfer publicly designated lands:

> Without venturing to express any definite opinion whether such a plat should be regarded as a grant or as a mere offer to dedicate, it is very clear to our minds that it is one or the other, or perhaps partakes of the nature of both, and that some action by competent public authority is essential before it can have the intended effect. If the plat is only an offer to dedicate, the offer must be accepted or it may be withdrawn, and after any considerable lapse of time must be regarded as no longer open for acceptance, unless the circum-

[1] 1967 PA 288, § 253, MCL 560.253(2); MSA 26.430(253), similarly provides:

> The land intended for the streets, alleys, commons, parks or other public uses as designated on the plat shall be held by the municipality in which the plat is situated in trust to and for such uses and purposes.

stances are such as to make the offer continuous. On this subject our own decisions have been full and explicit. —*People v Jones,* 6 Mich 176 (1858); *Lee v Lake,* 14 Mich 12 (1865); *Baker v Johnston,* 21 Mich 319 (1870).

But if the plat is regarded as a grant, it is equally necessary that there should be acceptance. No one can thrust a grant upon another without his assent. —*Thompson v Leach,* 2 Ventris 198; *Jackson v Goodell,* 20 Johns 187; *Hurst v McNeil,* 1 Wash CC 70. It is true, acceptance of a grant may be presumed when it is beneficial,—*Tompkins v Wheeler,* 16 Pet 118; *Maynard v Maynard,* 10 Mass 456; *Church v Gilman,* 15 Wend 661, 663; *Peavey v Tilton,* 18 NH 151; *Townson v Tickell,* 3 B & Ald 36; but there can be no conclusive presumption that a grant of land for a public way is so. We may almost take judicial notice that an offer of land for such a purpose is often—and very properly—declined, for the reason that no such way as the one proposed is needed, and by the acceptance the public would be burdened with obligations without corresponding benefits.[2]

Accord: *Ryan v Royal Oak Twp,* 289 Mich 469, 473; 286 NW 793 (1939); *Salzer v State Treasurer,* 48 Mich App 34, 37; 209 NW2d 849 (1973); *Nelson v Roscommon Co Rd Comm,* 117 Mich App 125, 131; 323 NW2d 621 (1982). Cf. *Pulcifer v Bishop,* 246 Mich 579, 582; 225 NW 3 (1929); *Kirchen v Remenga,* 291 Mich 94, 110-112; 288 NW 344 (1939) (platting and sale of lots constitutes a transfer of private rights in publicly designated lands to the purchasers of lots).

Not even Justice COOLEY has attempted to square the rule of acceptance with the explicit language of the plat act that recording "shall be deemed a sufficient conveyance to vest the fee." However, the policy underlying the additional re-

---

[2] 1839 PA 91, which preceded 1925 PA 360, contained identical language regarding the transfer of lands platted for public use.

quirement of acceptance is sound. Furthermore, the plat act was repeatedly amended between 1839 and 1967 without significantly altering the language addressing conveyance of lands designated for public use. The Legislature is presumed to be aware of prior interpretations when amending a statute. *General Motors Corp v Detroit*, 141 Mich App 630, 634; 368 NW2d 739 (1985). We can only conclude that there has been legislative acquiescence in the rule of acceptance of parcels of property dedicated for public use when platted.

Acceptance of such parcels may be: (1) formal by resolution; (2) informal through the expenditure of public money for repair, improvement and control of the roadway; or (3) informal through public use. *Hooker v City of Grosse Pointe*, 328 Mich 621, 630; 44 NW2d 134 (1950). However, acceptance must be made within a reasonable time after the offer. *Miller, supra,* 449; *Field v Village of Manchester*, 32 Mich 279, 281 (1875); *Nelson v Roscommon Co Rd Comm, supra,* 131. What constitutes a reasonable time is largely governed by the surrounding circumstances. As long as the original proprietor or one claiming through him takes no steps to withdraw the offer, it is considered to be continuing. *White v Smith*, 37 Mich 290, 295-296 (1877); *Ackerman v Spring Lake Twp*, 12 Mich App 498; 163 NW2d 230 (1968).

Defendants have argued that there was formal acceptance of both Liberty Street and Houghton View Drive by resolutions of the Roscommon County Road Commission pursuant to the McNitt Act, 1931 PA 130, repealed, 1951 PA 51, § 21. Evidence was produced at trial to establish that, on April 2, 1937, the county road commission adopted a resolution to take over maintenance of all streets dedicated for public use in recorded plats within Roscommon County. Further evidence

established that, on March 16, 1953, the county road commission resolved: (a) to formally acknowledge, confirm and reaffirm their prior taking over as county roads all streets required to be taken as county roads pursuant to the McNitt Act; and (b) to take over as county roads pursuant to 1951 PA 51, § 19, MCL 247.669; MSA 9.1097(19), all dedicated streets and alleys in specified subdivisions, including Cedar Bluffs First Annex and Westfall Heights.

The trial court apparently held that these "McNitt Act acceptances" were sufficient in and of themselves to vest the fee in Liberty Street in the public. To the extent that the trial court's opinion so holds, we disagree. Prior decisions indicate that acceptance may in part be based upon the McNitt Act. *Rice v Clare Co Rd Comm*, 346 Mich 658; 78 NW2d 651 (1956); *Pulleyblank v Mason Co Rd Comm*, 350 Mich 223; 86 NW2d 309 (1957); *Ackerman, supra; Salzer, supra.* However, the McNitt Act does not allow incorporation of a private street into a county road system. 1931 PA 130, § 1; *Pulleyblank, supra,* 230; *Salzer, supra, 39.* Thus, before McNitt Act resolutions can effect incorporation of a street into the county road system, the street must be "public" in some sense. Mere designation of a street as public in a plat is insufficient. *Salzer, supra.* However, "McNitt Act acceptance" in addition to other acts of acceptance may furnish proof that the holding of a street by the general public is open, notorious and exclusive. *Pulleyblank, supra.*

Since no other acts of formal acceptance were alleged by defendants, we turn to evidence of informal acceptance. In this regard, the trial court noted evidence that public funds had been used to install a drain and pave the Liberty Street roadway in 1962. Acceptance of lands dedicated for

public use may be made by expenditure of public money for improvement and control of the roadway. *Hooker, supra.*

The trial court's findings of improvements to Liberty Street are not disputed. However, plaintiffs raise two arguments against the trial court's holding that Liberty Street was thereby accepted by the public. First, plaintiffs assert that the offer of dedication through the recording of the plat was not accepted within a reasonable time. This argument is easily dismissed. As we have observed, such an offer is considered to be continuing as long as the original proprietor or those claiming through him take no steps to withdraw the offer. *White, Ackerman, supra.* Defendants point to no evidence indicating that steps were taken to withdraw the offer of Liberty Street prior to 1962 and we can find none in the record. Thus, we conclude that there was acceptance of Liberty Street through the improvements made in 1962.

Plaintiffs' second argument in this regard is that, even if there was acceptance by way of the 1962 improvements to Liberty Street, that acceptance is limited to the extent of the improvements —presumably the seventeen foot width of the paved portion of the street. In this regard, plaintiffs cite *Wayne Co v Miller, supra,* 449, *Field v Village of Manchester, supra,* 281, *Pontiac Twp v Featherstone,* 319 Mich 382, 390-391; 29 NW2d 898 (1947), and *Nelson v Roscommon Co Rd Comm, supra,* 132. Those cases are, however, distinguishable from the instant case. In *Miller, Field* and *Featherstone,* not only had the public authority failed to make improvements to the designated public land, but the private litigants had each erected fences and excluded the public from the land for a number of years. Thus, these cases may be seen as specific examples of the failure of public

authorities to informally accept the disputed land prior to a withdrawal of the offer by those claiming through the original proprietor of the plat. *Nelson* is somewhat different in that no fence had been erected by the private landowner. However, the private property owners in *Nelson* owned lots on both sides of the disputed street and had effectively excluded the public by allowing selective growth of trees, bushes and undergrowth for some eighty years.

Here, on the other hand, plaintiffs did nothing to exclude the public from any portion of Liberty Street until Eyde Brothers erected their fence in 1980. This dispute began immediately thereafter, with defendants' demands that the fence be removed and the filing of plaintiffs' suit. We are not impressed by plaintiffs' suggestion that construction of the Bebows' sea wall effectively excluded the public. It would seem unassailable that the design of the sea wall, matching the contours of the banks of Liberty Street, would not present a barrier to public use. Indeed, to the extent that the Bebow sea wall has prevented erosion of the banks of Liberty Street, we would be inclined to conclude that it actually enhanced and protected public use. We therefore believe that the general rule of acceptance by improvement is applicable in this instance. It is not essential that every part of a highway should be worked in order to evidence the intention of the public authorities to accept and maintain the entire highway. *Olsen v Village of Grand Beach,* 282 Mich 364, 372; 276 NW 481 (1937); *Pulleyblank, supra,* 227; *Elias Bros, Inc v City of Hazel Park,* 1 Mich App 30, 34; 133 NW2d 206 (1965).[3]

In summary, Liberty Street was designated as

---

[3] That common-law rule has been codified at MCL 247.190; MSA 9.270.

land reserved for public use by the platting of the Cedar Bluffs First Annex and Westfall Heights subdivisions. It was accepted by public authorities with the construction of a drain and paved surface in 1962. The occupation of the land has been continuous since that time. Furthermore, by virtue of McNitt Act acceptance, public occupation has undeniably been open and notorious. We therefore conclude that, in accordance with the Plat Act and applicable case law, public authorities have a fee interest in the entire width of Liberty Street as platted.[4]

Our resolution of this issue obviates the need to address plaintiffs' arguments directed to the retroactivity of MCL 560.255b; MSA 26.430(255b) and the issue of highway by user. However, our analysis does not resolve the question of the alleged encroachment of the Eyde Brothers' fence along Houghton View Drive. While we are inclined to believe that the same analysis would apply to this portion of the disputed property, we are unable to do so because of the absence of findings of fact by the trial court. See Part II. This matter is therefore remanded to the trial court for further findings of fact and application of legal principles regarding the platting and acceptance of the disputed portion of Houghton View Drive.

II

THE NUISANCE CLAIM

The word "nuisance" has been variously defined and is so comprehensive that its existence must be determined from the facts and circumstances of each case. *Ebel v Saginaw Co Bd of Road Comm'rs,*

---

[4] At various times in the course of this litigation, plaintiffs have asserted that Liberty Street has been abandoned by defendants. Plaintiffs do not raise this issue on appeal.

386 Mich 598, 606; 194 NW2d 365 (1972). As explained previously by this Court in *Martin v Michigan,* 129 Mich App 100, 108; 341 NW2d 239 (1983), lv den 422 Mich 891 (1985):

> There are two categories of nuisances: nuisances per se and nuisances in fact. The latter category is further divided into intentional nuisances and negligent nuisances. *Gerzeski v Dep't of State Highways* [403 Mich 149; 268 NW2d 525 (1978)] *supra.* A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances. Thus, the existence of a nuisance per se is established by proof of the act which created it and becomes a nuisance as a matter of law. The defendant's liability is estab-, lished at that point. *Ford v Detroit* [91 Mich App 333; 283 NW2d 739 (1979)] *supra,* p 335.
>
> In contrast, a nuisance in fact is a nuisance by reason of circumstances and surroundings, and an act may be found to be a nuisance in fact where its natural tendency is to create danger and inflict injury to person or property. The existence of a nuisance in fact is a question for the trier of fact, which may or may not find the existence of a nuisance from proof of the act and its consequences. *Ford v Detroit, supra,* pp 335-336.

The distinction between an intentional nuisance in fact and a negligent nuisance in fact is particularly important in this case, since the defendants are governmental units. Only an intentional nuisance in fact falls within an exception to the rule of governmental tort immunity. *Rosario v City of Lansing,* 403 Mich 124, 132; 268 NW2d 230 (1978); *Gerzeski v Dep't of State Highways,* 403 Mich 149; 268 NW2d 525 (1978). See generally, *Martin, supra,* 108-109. As we have recently explained in *Velmer v Baraga Area Schools,* 157 Mich App 489, 500; 403 NW2d 171 (1987).

An intentionally created nuisance requires proof that the person creating or continuing the nuisance knew or must have known that harm to plaintiff was *substantially certain* to follow. *Pate v Dep't of Transportation,* 127 Mich App 130, 135-136; 339 NW2d 3 (1983); *Rosario, supra,* 143, n 2. It is not even enough that the person creating the nuisance knows that harm "might result"; he must know that harm is "substantially certain to follow". *Zyskowski v Habelmann,* 150 Mich App 230, 240-241; 388 NW2d 315 (1986).

See also *Velmer, supra,* pp 501-502 (distinguishing intentional, negligent omissions from intentional, negligent commissions).

The locality and surroundings of the challenged operation or thing become an important factor in arriving at a proper judicial decision of the existence or nonexistence of an actionable nuisance in fact. That which would be actionable or abatable in one place or locality might not be such in another. *Obrecht v National Gypsum Co,* 361 Mich 399, 417; 105 NW2d 143 (1960); *Borsvold v United Dairies,* 347 Mich 672, 681; 81 NW2d 378 (1957); *Smith v Western Wayne Co Conservation Ass'n,* 380 Mich 526, 536; 158 NW2d 463 (1968). Thus, for example, it has been held that the more residential the area, the less noise will be tolerable. *Smith, supra,* 537. More noise is tolerable before bedtime than afterwards. *Smith, supra.*

In general, a court of equity has the power to enjoin a nuisance. *Norton Shores v Carr,* 81 Mich App 715, 724; 265 NW2d 802 (1978), lv den 403 Mich 812 (1978). It is the policy of the courts to tailor the remedy to the problem and, where possible, to abate the nuisance without completely destroying legitimate activity. *Norton Shores, supra.*

Here, plaintiffs have pled that a number of the public's uses of Liberty Street constitute a nui-

sance. Count I, paragraph A, of the complaint
alleges:

> 8. That Liberty Avenue from Houghton Lake to
> Houghton View Drive is a nuisance for the follow-
> ing reasons:
>
> A. With great frequency, this section of road is
> used by people who are so noisy that they impair
> the peace, rest and comfort of Plaintiffs within
> their own homes. This noise continues at all hours
> of the day and night.
>
> B. That the people who use this section of the
> road frequently leave this area strewn with litter
> and garbage.
>
> C. That cars are often parked illegally on this
> section of the road and are not ticketed or towed
> despite the Plaintiffs requests that they be ticketed
> or towed.
>
> D. That many trespassers enter onto the Plain-
> tiffs' property from this section of the road who
> are difficult to handle because they are under the
> influence of alcohol.
>
> E. That this section of road invites trespass onto
> the Plaintiffs' property because no fence was built
> at the edge of the Right of Way by the Roscommon
> County Board of Road Commissioners.
>
> F. That trespassers do enter onto the Plaintiffs'
> properties from Liberty Avenue and use Plaintiffs'
> private docks and private beaches. That the Road
> emptying into Houghton Lake at this point invites
> trespassers to the Plaintiffs' property.
>
> \* \* \*
>
> H. That Defendants do not provide nor does a
> police department, State, County or local author-
> ity, adequately patrol this section of the road, nor
> does the DNR adequately patrol this section of the
> road or the beaches, lakefront and water that this
> Road leads to and empties into. The failure of
> Defendants to carry out their duties have created
> this nuisance to Plaintiffs.

There was conflicting testimony as to the existence

and frequency of the public actions of noise, loitering, littering and trespass. There was also conflicting testimony as to the knowledge of local law enforcement officials about those activities and the adequacy of their response.

Unfortunately, the trial court's findings do not allow this Court to determine how these factual issues were resolved .or how nuisance principles were applied by the trial court. In regard to the question of nuisance, the trial court simply concluded:

1. The Court does not find that it has the authority to close Liberty Street for this reason.

2. Arguendo, for purposes of this opinion, if the Court does have authority, then the Court does not find, in its discretion, that the actions by the public are so outrageous that the street should be closed.

3. The Court does find that there have been occasions when the public has engaged in activities which do constitute nuisances.

Plaintiff, Patrick Eyde, testified that, since he purchased the property in the winter of 1978, there have been many instances of improper behavior by the public. Such instances occur in the summer, and, in particular, on week-ends.

Witness Roy Kaleto, former owner of Plaintiff Bebows' property, described improper behavior. He hasn't returned to the property since he sold it in 1973.

Both Plaintiffs Ernest Bebow and Nancy Bebow described improper behavior.

Testimony of Robert Sullivan, Defendant Denton Township Treasurer, described what the township had received by way of complaints and what the township had done by way of enforcement.

The issue of a public nuisance is a continuing issue. The Court would encourage the Plaintiffs to contact the Defendants to reasonably act to enforce applicable laws.

The trial court's findings of fact leave many issues unresolved, including: (1) the specific nature of the nuisance; (2) whether the activities on Liberty Street constituted a nuisance in fact or nuisance per se; (3) whether, assuming that the nuisance was one in fact, it was an intentional or negligent nuisance in fact; (4) the primary and reasonable use of plaintiffs' property and whether the nuisance interfered with that use; and (5) what specific relief, other than closing Liberty Street entirely, might be tailored so as to abate the nuisance.

We believe that specific trial-court findings in this case are particularly important. Although it has been said that liability for nuisance is a species of tort liability, *Rosario v City of Lansing, supra,* 131, n 4; 58 Am Jur 2d, Nuisances, § 19, p 580, equitable authority in nuisance actions is well established. *Norton Shores, supra.* In some jurisdictions, nuisance actions may be brought in either equity or law. 58 Am Jur 2d, Nuisances, § 142, p 714. Moreover, before we can determine whether these defendants are liable for nuisance, the nature of the nuisance must be clear.

As we have explained in *Nicpon v Nicpon,* 9 Mich App 373, 377-378; 157 NW2d 464 (1968):

> An appellate court's primary function in regard to fact finding is review of the trial court's record and determination whether that record supports the trial court's findings. It is not the function of an appellate court to decide disputed questions of fact in the first instance and then choose between affirmance or reversal by testing its factual conclusion against that which the trial court *might* have or, if the trial judge's reasoning at the time of judgment were identical with that of the appellate court at the time of review, *must* have reached for it to issue the judgment it did.
>
> Clear and complete findings by the trial judge

are essential to enable us properly to exercise and not exceed our powers of review.

"We must know what a decision means before the duty becomes ours to say whether it is right or wrong." Mr. Justice Cardozo, for the Court, in *United States v Chicago, M St P & P R Co,* 294 US 499, 511; 55 S Ct 462; 79 L Ed 1023, (1935).

We decline to speculate as to what the trial court might have found or how it might have applied its equitable powers of relief based upon those findings. This case must therefore be remanded for further findings of fact and application of the legal principles discussed herein by the trial court.

Remanded for further proceedings consistent with this opinion. We retain jurisdiction.