*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SARAH ZELLER and SCOTT ZELLER,

        Plaintiffs-Appellants,

v

GRAND TRUNK WESTERN RAILROAD
COMPANY,

        Defendant-Appellee,

and

CANADIAN NATIONAL RAILWAY COMPANY,
ILLINOIS CENTRAL RAILROAD COMPANY,
CN CUSTOMS BROKERAGE SERVICES (USA),
INC., and STELLAR DISTRIBUTION SERVICES,
INC.,

        Defendants.

UNPUBLISHED
November 19, 2020

No. 348715
St. Clair Circuit Court
LC No. 2016-000520-NO

Before: GLEICHER, P.J., and K. F. KELLY and SHAPIRO, JJ.

PER CURIAM.

Plaintiffs appeal as of right the trial court's order granting summary disposition under MCR 2.116(C)(10) to defendant Grand Trunk Western Railroad Company ("Grand Trunk"). Although the trial court erred in concluding that plaintiff Sarah Zeller lacked personal knowledge to support her claims, the trial court appropriately granted summary disposition on alternate grounds. Accordingly, finding no error that warrants reversal, we affirm.

-1-

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff[1] worked for defendant CN Customs Brokerage Services (USA), Inc., at the railyard of defendant Grand Trunk in Port Huron, Michigan. Because plaintiff worked in a trailer that had no bathroom facilities, she was required to enter a separate building owned by Grand Trunk when necessary to use the restroom. Plaintiff alleged that in May 2012, she was accosted by an unidentified male when exiting the restroom. Although she mentioned the incident to some coworkers, she did not formally report the incident until September 2012. Plaintiff initially reported that a man, whom she was unable to identify, was lurking outside the restroom door and made a sexually explicit comment to her when she left the restroom. Grand Trunk's Human Resources Department investigated plaintiff's complaint in accordance with its sexual harassment policies, but concluded on October 1, 2012, that it was unable to substantiate a violation of its policies because it could not find any witnesses or persons responsible.

On October 24, 2012, plaintiff reported discovering an offensive note that was left on her vehicle and finding an open condom near the vehicle. Grand Trunk has its own police force, the CN Police, which conducted an investigation of the matter. Plaintiff also reported receiving additional notes in the weeks that followed, but no charges were filed, primarily because plaintiff was unable to identify the person or persons responsible and the CN Police's investigation failed to identify a suspect.

Plaintiff stopped working in November 2012 and left her employment in 2013. Afterward, she received therapy and mental health services, which she claims enabled her to recover some of her memories and recall more details about the incidents at the railyard. In particular, plaintiff recalled that the May 2012 restroom incident involved an actual sexual assault and also recalled the identity of that perpetrator. Plaintiffs filed this action against Grand Trunk, seeking to hold it liable for the criminal activity that plaintiff experienced on its property and to hold it vicariously liable for the alleged negligence of the CN Police in its investigation of that activity.

The trial court granted Grand Trunk's motion for summary disposition primarily because it concluded that plaintiff, who had been diagnosed as having multiple personality disorder and claimed that her recall of some of the events was based in part on flashbacks and information obtained through one of her alter egos, did not have personal knowledge of the facts supporting her claims. The court also concluded that plaintiff could not impose liability on Grand Trunk for the CN Police's alleged negligence in its investigation of her allegations. Accordingly, the court dismissed plaintiffs' claims.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Bennett v Russell*, 322 Mich App 638, 642; 913 NW2d 364 (2018). Summary disposition is appropriate

---

[1] The claims by plaintiff Sarah Zeller arise from alleged criminal activity and stalking that occurred during her employment and challenged the security of the work environment and the police investigation. The claim by plaintiff Scott Zeller for loss of consortium is derivative of her claims. Accordingly, we use the singular term "plaintiff" to refer to plaintiff Sarah Zeller.

pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties. MCR 2.116(G)(4), (G)(5); *Puetz v Spectrum Health Hosp*, 324 Mich App 51, 68; 919 NW2d 439 (2018). The trial court may not render factual findings on disputed factual issues when resolving the dispositive motion and may not make credibility determinations. *Id*. at 68-69.

## II. PLAINTIFF'S PERSONAL KNOWLEDGE AND COMPETENCY

Plaintiff first alleges that the trial court erred in concluding that Grand Trunk was entitled to summary disposition because plaintiff lacked personal knowledge in support of her claims. We agree.

As the trial court observed, plaintiff's initial accounts of the May 2012 restroom incident did not include many of the facts that she revealed years later, which she claimed she was able to recall through flashbacks and therapy, including whether the incident involved an actual sexual assault and the identity of the perpetrator. The trial court concluded that this transition in recollection effectively violated MRE 602 which requires the witness have personal knowledge to testify. However, lapses in memories do not establish a lack of personal knowledge to support a claim. As explained in 98 CJS, Witnesses, § 97, p 111:

> Since a witness must have personal knowledge of the facts to which he or she testifies, it necessarily follows that the witness must have the capacity to both perceive and recollect those facts. A witness is not incompetent to testify, however, merely because the witness's memory of the subject matter of the testimony is less than complete. A witness may testify as to facts within his or her knowledge although the witness's recollection is vague or imperfect, and the witness is unwilling to commit absolutely to the truth of what he or she says or is unable to remember the entire transaction. The rationale is that memory lapses reflect more upon the witness's credibility than on his or her capacities.

> Generally, a witness is permitted to testify as to his or her present recollection of a matter even if the witness has made a prior inconsistent statement concerning it.

Indeed, in the context of the admission of expert testimony, gaps and weaknesses in the expertise presents a subject for cross-examination, and addresses the weight to be given the testimony, not its admissibility. See *Wischmeyer v Schanz*, 449 Mich 469, 480; 536 NW2d 760 (1995). Further, to the extent that plaintiff had lapses in memory regarding some events, other witnesses or evidence could have been used to support her claims. The foundation for plaintiffs' claims involved the May 2012 restroom incident, as well as the stalking conduct that plaintiff experienced in 2012. However, plaintiffs' claims were broader than these events. They also encompassed the extent to which Grand Trunk could be held responsible for protecting workers on its premises and the adequacy of its responses to plaintiff's reports of misconduct. Thus, plaintiffs' claims were not merely contingent on the degree of any assault allegedly committed

upon her, but also depended on facts showing what information was known to Grand Trunk and how it responded to that information. Although the trial court recognized that plaintiff's accounts of the underlying incidents had changed and evolved over time, it did not analyze the extent to which all of plaintiffs' claims were dependent on plaintiff's testimony. Plaintiffs' claims depended in large part on Grand Trunk's knowledge of what was occurring on its premises and its responses to reported misconduct. There was evidence that plaintiff reported the various matters to other coworkers and her supervisor, that plaintiff's reports of stalking conduct was supported by preserved written notes and other physical evidence, that some of this physical evidence was submitted for forensic analysis, that the reported matters were investigated by the Human Resources Department and the CN Police, and reports of these investigations were generated. This evidence was admissible to factually support the occurrences of the events that formed the basis for plaintiffs' claims, as well as to demonstrate what information was provided to Grand Trunk and how Grand Trunk responded and acted on that information.[2]

In sum, the trial court erred by granting Grand Trunk summary disposition on the basis that plaintiff lacked personal knowledge of the underlying events. However, as explained below, we conclude that Grand Trunk was entitled to summary disposition on alternative grounds. "This Court will not reverse a trial court's order of summary disposition when the right result was reached for the wrong reason." *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 615; 854 NW2d 172 (2014).

## II. GRAND TRUNK'S ALTERNATIVE GROUNDS FOR SUMMARY DISPOSITION

Plaintiffs contend that the trial court erred in granting summary disposition of her claims of negligence, vicarious liability, and nuisance. We disagree.

Specifically, plaintiffs alleged that Grand Trunk had a legal duty to provide a safe premises for its business invitees, which included a duty to reasonably expedite the involvement of law enforcement to respond to specific, ongoing aggravated stalking on its premises directed at plaintiff. Plaintiffs also alleged that Grand Trunk's private police force was negligent in responding to and investigating the assault and stalking incidents involving plaintiff, and that Grand Trunk is vicariously liable for the conduct of its police force. However, Grand Trunk was entitled to summary disposition because it cannot be held liable for negligence or nuisance for the third-party criminal conduct committed upon plaintiff.

## A. NEGLIGENCE

Plaintiff relies on *Bailey v Schaaf*, 494 Mich 595, 599; 835 NW2d 413 (2013), in which our Supreme Court, citing its decision in *MacDonald v PKT, Inc*, 464 Mich 322, 338; 628 NW2d

---

[2] The trial court also erred to the extent that it questioned plaintiff's mental competency when reaching the issue of personal knowledge. The trial court cited individual notes during a therapy session analyzing whether plaintiff experienced a flashback of an event or a hallucination. Irrespective of individual sessions and progress notes, plaintiff was treated by multiple mental health professionals, and there is no indication that these individuals deemed plaintiff mentally incompetent to testify.

33 (2001), held that landlords, like merchants, have a limited duty to protect against the criminal acts of third parties. The Court stated:

> Michigan law imposes a duty on a merchant only when the merchant has notice that a third party's criminal acts pose a risk of imminent and foreseeable harm to an identifiable invitee. In such a situation, the merchant's duty to that invitee is limited to reasonably expediting involvement of the police. Recognizing that landlords and merchants exert similar degrees of control over their premises, and cognizant of our historical and consistent treatment of their duty to remedy physical defects, today we make clear that landlords owe the same limited duty of care when put on notice of criminal acts that pose a risk of imminent and foreseeable harm to an identifiable tenant or invitee—a duty to reasonably expedite police involvement. [*Bailey*, 494 Mich at 599-600.]

Plaintiffs claim that Grand Trunk had notice of the assaultive and stalking activity by one or more persons against plaintiff on its premises. Viewed in the light most favorable to plaintiffs, the evidence showed that Grand Trunk had notice that plaintiff was a target of harassment or stalking activity on its premises, giving rise to a limited duty by Grand Trunk to respond to the criminal acts of third parties on its premises. The scope of this duty is explained in *Bailey*, 494 Mich at 616-617, in which the Court stated:

> If and when a landlord's duty is triggered, a reasonable response by the landlord is required. Typically, whether an actor proceeded reasonably is a question for the fact-finder. But, just as in *MacDonald* and *Williams* [*v Cunningham Drug Stores, Inc*, 429 Mich 495, 501; 418 NW2d 381], we determine as a matter of law what constitutes reasonable care when a landlord is confronted with imminent criminal acts occurring on the premises under the landlord's control. And, like *MacDonald*, we make clear that as a matter of law, the duty to respond requires only that a landlord make reasonable efforts to expedite police involvement. Landlords, like merchants, have a low degree of control over the criminal acts of others. Our conclusion today does not expand a landlord's duty concerning third-party criminal acts; requiring more of a landlord than taking reasonable efforts to expediate police involvement would essentially result in the duty to provide police protection, a concept this Court has repeatedly rejected. Consistent with our recognition that the duty to provide police protection is vested with the government, and given the unpredictability of specific acts of crime, we decline to impose any greater obligation on a landlord. [Footnotes omitted.]

In *Bailey*, 494 Mich at 617-618, the Court held that the plaintiff alleged sufficient facts *in the complaint* that, if established, gave rise to a duty by the defendant landlord to notify the police of an ongoing situation involving a gunman on the premises in full view of two security guards, who were agents of the landlord for purpose of responding to safety issues. The Court concluded that the allegations supported the plaintiff's claim that the defendant landlord had a duty to reasonably expedite the involvement of the police. *Id.* at 618.

Preliminarily, plaintiffs did not present any evidence to support a claim that Grand Trunk breached any duty of care related to the initial May 2012 restroom incident. There was no evidence

that Grand Trunk knew that criminal activity was occurring in the restroom of its building or had reason to suspect that plaintiff would be a possible victim of criminal activity if she used the restroom. Indeed, plaintiff did not immediately report the May 2012 restroom incident, but waited until September 2012 to bring the matter to the attention of Human Resources. Additionally, she did not initially report the incident as an actual sexual assault, but apparently described it as a matter of sexual harassment.

Nonetheless, plaintiffs seemingly argue that Grand Trunk can be liable for not timely launching a criminal investigation when it learned or should have learned through the Human Resources investigation that this incident involved a criminal matter. In her complaint, plaintiff alleged that on approximately September 1, 2012, Human Resources launched an inquiry to investigate sexual harassment of plaintiff related to the May restroom incident, and that it was not until later, in October 2012, that the CN Police became involved after a note was left on plaintiff's vehicle and plaintiff discovered a condom near the vehicle.

However, in light of the manner in which the claim was raised with Human Resources in September 2012 as sexual harassment and not a sexual assault, there is no indication that Human Resources sought CN Police involvement to conduct an investigation. Indeed, plaintiff herself never contacted the police to report a suspected crime or to identify herself as a victim of a criminal act. During that initial time frame, the allegations of sexual harassment in the workplace did not amount to notice of an imminent and foreseeable risk of harm to plaintiff that gave rise to a duty by Grand Trunk to offer plaintiff emergency assistance by contacting the police. *Bailey*, 494 Mich at 599-600. Human Resources concluded its investigation on October 1, 2012. It was unable to substantiate a violation of its sexual harassment policies because it could not find any witnesses or persons responsible for the May 2012 event. The next incident involving plaintiff occurred on October 24, 2012, when plaintiff found an offensive note on her vehicle and an open condom near the vehicle. At that point, the CN Police became involved and a formal investigation was opened.

Given these facts, there is no merit to plaintiffs' argument that Grand Trunk had a duty to provide police assistance or to have the CN Police begin an investigation in September 2012. Before the incident on October 24, 2012, there was no evidence that plaintiff was a victim of criminal activity or subject to a risk of imminent and foreseeable harm. *Id.* at 599-600.

Plaintiffs argue that, like in *Bailey*, where the defendant was not entitled to rely solely on its security agents, Grand Trunk had a duty to involve local law enforcement and was not entitled to rely solely on the CN Police. However, this case is distinguishable from *Bailey* in this regard. The evidence showed that the CN Police are duly commissioned officers with "the powers of sheriffs, marshals, constables, and municipal police officers" and have responsibility to "enforce and compel obedience to the laws of this state and to the ordinances of the cities, villages, and townships of this state when engaged in the discharge of his or her duties as a railroad police officer." MCL 462.377. Thus, unlike the security officers in *Bailey*, the CN Police had full authority to investigate this matter and make any necessary arrests. In *Bailey*, the Court explained that the duty owed to business invitees is to reasonably expedite "police involvement." *Id.* at 599-600. That occurred in this case when Grand Trunk contacted a police agency with full law enforcement authority. Nothing in *Bailey* required Grand Trunk to contact a specific police force.

The submitted evidence showed that the CN Police acted consistent with how a local police force would have acted. They interviewed witnesses, collected evidence, and submitted evidence for forensic analysis. Further, we again note that plaintiff never reported an actual sexual assault while she was still working at the railyard. That information was revealed years later, after plaintiff had left her employment, when she claimed that therapy enabled her to recover additional memories of her experiences during her employment. To the extent plaintiff suggests that Grand Trunk had a duty to involve local law enforcement in light of a lack of specialized training in sexual assaults by the CN Police, the initial report by plaintiff in September 2012 did not allege a sexual assault. Accordingly, the CN Police did not have knowledge of a necessity to enlist agencies with specialized training in sexual assaults.

There also is no support for plaintiffs' argument that the CN Police actively prevented local law enforcement from investigating plaintiff's allegations. At most, plaintiff showed that the St. Clair County Sheriff's Department made an inquiry after plaintiff contacted it in November 2012, but that the department demurred to the CN Police's jurisdiction. A deputy responded to plaintiff's call and took her initial report, but after verifying that no one needed immediate assistance, the deputy left once he determined that the CN Police were already involved. While plaintiff testified that the county sheriff told her that the CN Police did not like the sheriff on the railroad's property, that does not demonstrate that the CN Police actively prevented local law enforcement from investigating.

In sum, the duty under *Bailey* relating to a third party's criminal acts is limited to reasonably notifying the "police" when the property owner has notice that a third party's criminal acts pose a risk of imminent and foreseeable harm to an identifiable invitee. In the present case, the evidence showed that plaintiff's initial reports did not provide notice that she was the victim of a criminal sexual assault. Once Grand Trunk was notified that plaintiff was a possible stalking victim, it promptly notified its commissioned police force. Therefore, Grand Trunk was entitled to summary disposition with respect to plaintiffs' claim that Grand Trunk was negligent for not expeditiously contacting law enforcement.

Plaintiffs additionally argue that Grand Trunk was negligent for failing to secure its premises. To the extent that plaintiffs attempt to impose liability on Grand Trunk for failing to provide adequate security to protect invitees on its premises, the Court in *Scott v Harper Recreation, Inc*, 444 Mich 441, 448-452; 506 NW2d 857 (1993), reaffirmed that "a merchant is not ordinarily required to protect customers from the criminal acts of third persons," and further clarified that business owners cannot be held liable when implemented security measures fail to prevent criminal activity. Moreover, when safety precautions are taken, a merchant cannot be sued under a theory that the security measures taken "were less effective than they could or should have been." *Krass v Tri-Co Security, Inc*, 233 Mich App 661, 680; 593 NW2d 578 (1999). An exception to this rule is foreseeable criminal conduct. *Id.* at 682.

Although plaintiffs argue that Grand Trunk could have taken other actions to protect plaintiff from criminal conduct, there was no evidence suggesting that the May 2012 restroom incident was foreseeable or that future criminal activity was imminent. Moreover, plaintiff's delayed and incomplete report of that incident did not give Grand Trunk reason to believe that plaintiff had been sexually assaulted, was at risk of a foreseeable sexual assault, or was foreseeably at risk of ongoing stalking conduct. The later incidents involving the notes left on plaintiff's car

and near her workspace involved conduct unrelated to the bathroom area or the initial bathroom incident. Moreover, the evidence showed that upon receiving notice of the stalking activity directed at plaintiff, Grand Trunk's police force promptly launched an investigation and took steps to better secure its premises, including by adding cameras and fixing the problematic lock in the women's restroom. Although there were subsequent incidents of stalking conduct directed at plaintiff, those incidents occurred on random occasions and at different locations. Plaintiff also alleged that some personal items were taken from her desk, but there was no evidence of a pattern of this conduct such that Grand Trunk should have anticipated it and acted to prevent it. There was no evidence suggesting that these separate incidents were imminent and foreseeable such that Grand Trunk had a duty to act to protect plaintiff from the conduct. In sum, Grand Trunk cannot be held liable because its security measures failed to protect plaintiff from possible criminal conduct of third parties.

## B. VICARIOUS LIABILITY

The trial court also properly granted summary disposition in favor of Grand Trunk with respect to plaintiffs' claim that Grand Trunk should be held vicariously liable for the CN Police's handling of this investigation. We hold that plaintiff lacks standing under the public-duty doctrine to assert a claim for negligence involving the actions of the CN Police of their performance of law enforcement functions.[3] This state has recognized that law enforcement officers generally do not owe a duty of care to individuals. Any duty to conduct a proper investigation is owed to the public, not an individual personally. *White v Beasley*, 453 Mich 308, 316-319; 552 NW2d 1 (1996). "[T]he public-duty doctrine insulates officers from tort liability for the negligent failure to provide police protection unless an individual plaintiff satisfies the special-relationship exception." *Id*. at 316. To meet the special-relationship exception, a plaintiff must satisfy the following test:

(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured;

(2) knowledge on the part of the municipality's agent that inaction could lead to harm;

(3) some form of direct contact between the municipality's agents and the injured party; and

(4) that party's justifiable reliance on the municipality's affirmative undertaking . . . . [*Id.* at 320, quoting *Cuffy v City of New York*, 69 NY2d 255, 260; 513 NYS2d 372; 505 NE2d 937 (1987).]

In this case, the submitted evidence does not establish a question of fact regarding the existence of a special relationship between plaintiff and the CN Police. Although there was direct contact between plaintiff and the CN Police once the CN Police were notified that plaintiff discovered an offensive note on her vehicle, they were not aware at that time that plaintiff had

---

[3] In light of our holding on this issue, we do not address defendant's application of governmental immunity.

previously been a victim of a sexual assault. Further, although the CN Police investigated the stalking conduct against plaintiff, there is no evidence that they affirmatively promised or agreed to act in some manner on plaintiff's behalf and failed to do so, or that plaintiff's conduct was guided by any reliance on any promise or undertaking of the CN Police. Accordingly, the special-relationship exception to the public-duty doctrine does not apply in this case.

In any event, the evidence fails to show that the CN Police conducted an inadequate investigation on the basis of the information that plaintiff provided at the time. Plaintiffs largely rely on their experts' opinions regarding errors in the investigation by the CN Police. Plaintiffs' experts primarily faulted the police for not following protocols for sexual assault cases. However, when plaintiff made her report to the CN Police, she did not report being touched or sexually assaulted in the May 2012 restroom incident, and the subsequent stalking conduct also did not involve a sexual assault. In therapy, plaintiff recovered memories of that incident as involving a sexual assault. Thus, the evidence would not be relevant in evaluating the adequacy of the CN Police's investigation because they had no reason to believe at the time of their investigation that the incident involved a sexual assault, and plaintiff was unable to identify a person or persons responsible.

The record shows that the CN Police preserved the physical evidence it collected and sent it to the Michigan State Police for examination. The note was checked for impressions and latent prints, and the condom was examined for DNA. The evidence also shows that the CN Police interviewed almost every person identified as working at the railyard in the area when the second reported incident occurred in November 2012, to determine if they witnessed anything relevant to the investigation. None of these witnesses had any useful information. The May 2012 restroom incident was not disclosed until several months after it occurred, plaintiff reported that she was alone with the suspect at the time of the incident, and plaintiff denied that she was able to identify the suspect. Consequently, there is no reason to believe that local law enforcement would have had better success than the CN Police in identifying a suspect. Even though plaintiff later identified her assailant, that information was not imparted to the CN Police at the time of their investigation in 2012, and there was no reliable evidence that the person she later identified was a suspect.

Plaintiffs' experts also faulted Grand Trunk for not adopting additional security measures. However, this relates to Grand Trunk's obligations as owner of the property. As discussed earlier, Grand Trunk's duty was limited to reasonably expediting the involvement of the police in response to known criminal activity and it cannot be held liable because any security measures implemented failed to prevent criminal activity. *Bailey*, 494 Mich at 599; *Scott*, 444 Mich at 448-452.[4]

---

[4] Plaintiffs also assert that Grand Trunk can be liable for negligently training its police force. However, there is no evidence that the CN Police lacked proper training to qualify as commissioned law enforcement officers as set forth in MCL 462.367(2). Plaintiffs have not explained why the CN Police lacked appropriate training and they did not factually support this argument with any evidence.

In sum, even if Grand Trunk could be held vicariously liable for the actions of the CN Police, plaintiffs have not shown that the CN Police were negligent in investigating the case on the basis of the information provided to them at the time.

## C. NUISANCE

The trial court did not separately address plaintiff's nuisance claim, but Grand Trunk was also entitled to summary disposition of that claim. Plaintiffs alleged that Grand Trunk, as the owner and possessor of the railyard, created or allowed dangerous physical conditions and protracted criminal activities on its property, which constituted a nuisance. Plaintiffs rely on *Wagner v Regency Inn Corp*, 186 Mich App 158; 463 NW2d 450 (1990), and *Sanford v Detroit*, 143 Mich App 194; 371 NW2d 904 (1985), in support of their argument. In *Wagner*, 186 Mich App at 163-167, this Court explained:

> The essence of plaintiff's nuisance claims is that defendants, who owned or controlled the Regency Inn premises, intentionally or negligently created or allowed the existence of certain dangerous physical conditions and protracted criminal activities on their premises which combined to constitute a public nuisance. A public nuisance is an unreasonable interference with a right common to the general public. 4 Restatement Torts, 2d, § 821B, p 87; *Sanford v Detroit*, 143 Mich App 194, 199; 371 NW2d 904 (1985). The term "unreasonable interference" includes: (1) conduct that significantly interferes with public health, safety, peace, comfort, or convenience; (2) conduct that is prescribed by law; (3) conduct of a continuing nature that produces a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect on public rights. *Id.*, 199-200.

> The possessor of land upon which the third person conducts an activity that causes a nuisance is subject to liability if: (1) he knows or has reason to know that the activity is being conducted and that it causes or involves an unreasonable risk of causing the nuisance, and (2) he consents to the activity or fails to exercise reasonable care to prevent the nuisance. 4 Restatement Torts, 2d, § 838, p 157.

> A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances. *Eyde Bros Development Co v Roscommon Co Bd of Rd Comm'rs*, 161 Mich App 654, 669; 411 NW2d 814 (1987).

> By contrast, a nuisance in fact is a nuisance by reason of circumstances and surroundings. An act may be found to be a nuisance in fact when its natural tendency is to create danger and inflict injury on person or property. *Eyde, supra*, at 669. A negligent nuisance in fact is one that is created by the landowner's negligent acts, that is, a violation of some duty owed to the plaintiff which results in a nuisance. *Buckeye Union Fire Ins Co v Michigan*, 383 Mich 630; 178 NW2d 476 (1970); *Young v Groenendal*, 10 Mich App 112; 159 NW2d 158 (1968). A nuisance in fact is intentional if the creator intends to bring about the conditions which are in fact found to be a nuisance. To establish intent, the plaintiff must show that when the defendant created or continued the condition causing the

nuisance, he knew or must have known that the injury was substantially certain to follow, in other words, deliberate conduct. *McCracken v Redford Twp*, 176 Mich App 365, 371; 439 NW2d 374 (1989); *Sanford, supra*, 199. We have reviewed counts i through m of plaintiff's complaint and conclude that when the factual allegations are accepted as true, along with any inferences which may be fairly drawn therefrom, plaintiff stated sufficient claims for nuisance per se and nuisance in fact, both negligent and intentional. *Mills, supra*, 205.

Moreover, after reviewing the documentary evidence on the record, we conclude that the trial court also correctly denied defendants' motions for summary disposition under MCR 2.116(C)(10), because plaintiff had sufficiently raised genuine issues of material fact. Deposition testimony by an employee of defendant Americar and the affidavit of a security guard employed at defendant Regency Inn detailed the prevailing conditions on the premises at issue. Stolen cars, shootings, and calls to the police were almost daily occurrences. Prostitutes maintained rooms in the hotel on a daily basis. Drug trafficking was a constant problem with Young Boys, Inc., a notorious drug trafficking gang, renting entire floors of the hotel from which to run their operations. Breakings and enterings, assaults, armed robberies, and car thefts were frequent occurrences on the premises. A fire bombing once "took out" an entire floor of the hotel. Defendants and their agents and employees were aware of these occurrences.

Plaintiff also presented a report by an expert who opined that, on the basis of the frequent occurrence of crime on the premises and the physical condition of the premises, such as a privacy fence around the parking lot, the premises was a "crime magnet," that is, a place where crimes were even more likely to occur than in the surrounding high-crime area. The physical condition of the premises conveyed a message that "anything goes" and that there would be no proprietary intervention.

According to the terms of its lease, defendant Americar controlled office and lobby space in the hotel and portions of the parking lot. Americar was obligated to keep the premises in good repair.

Courts are liberal in finding a genuine issue of material fact. . . . Giving the benefit of reasonable doubt and inference to plaintiff, it is reasonable to infer that defendants at least tolerated the conditions amounting to a nuisance and at worst condoned or created them. One need not stretch the imagination far to infer that defendants Regency Inn and Americar derived a substantial portion of their income from the illegal on-premises activities. One may infer that they knew or should have known that the physical condition of the premises and high degree of on-premises crime created an atmosphere of criminality which posed a significant risk to public safety and was substantially certain to result in types of activity such as that which caused plaintiff's injury. Contrary to defendants' contentions, evidence that they regularly called the police for assistance does not conclusively show that they took reasonable steps to abate the nuisance. It only creates a question of fact regarding defendants' intent and exercise of due care.

The existence of a nuisance per se is proved by evidence of the act which created it. *Eyde, supra*, 669. The existence of a nuisance in fact is a question for the trier of fact. *Id*. Whether a nuisance in fact is negligent or intentional is also a question of fact. We conclude that plaintiff presented sufficient documentary evidence to raise a question of fact concerning whether defendants created and maintained a nuisance per se and in fact on their premises and that the trial court properly denied defendants' motions for summary disposition.

While plaintiffs assert that Grand Trunk's property constituted a nuisance because it was essentially a "hotbed" of criminal or unsavory conduct, similar to that involved in *Wagner*, the submitted evidence does not support such a finding. Plaintiffs have submitted evidence of an isolated incident or incidents that occurred in a building that Grand Trunk operated for those working for or providing services to the railroad industry. There is no evidence that this site was known for ongoing criminal activity. Plaintiff did not present any evidence that Grand Trunk had notice of ongoing criminal activities on its premises or that it had created the conditions that allowed for criminal activity to occur. Because the evidence does not factually support a finding of an ongoing, dangerous condition on Grand Trunk's property due to criminal activity, Grand Trunk is also entitled to summary disposition of plaintiffs' nuisance claim.[5]

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Douglas B. Shapiro

K. F. Kelly, J. did not participate.

---

[5] Scott Zeller's claim for loss of consortium is wholly derivative of plaintiff's claims. Because Grand Trunk is entitled to summary disposition on all of plaintiff's claims, Scott's claim for loss of consortium was also properly dismissed.