KRAUS v GERRISH TOWNSHIP
APOSTILE v GERRISH TOWNSHIP
ZIOLA v GERRISH TOWNSHIP
LUCK v LYON TOWNSHIP

Docket Nos. 144762, 144763, 144998, 144999, 154036, 157571. Submitted February 10, 1994, at Grand Rapids. Decided May 2, 1994, at 9:40 A.M.

Otto Kraus, Edward Kutz, and others, who own property in the Whittington Park Subdivision, Gerrish Township, Roscommon County, brought an action in the Roscommon Circuit Court in 1989 against Gerrish Township, the Roscommon County Road Commission, and others, seeking the vacation of those platted but unimproved portions of Newman, Walnut, and Chestnut Avenues that are contiguous to their respective properties. They also sought a declaration that they had extinguished through adverse possession any easement interests held in the avenues by the other property owners in the subdivision that was platted in 1903. The trial court, Carl L. Horn, J., dismissed the adverse possession claim, but granted the vacation request, opining that neither the township nor the road commission had accepted the dedication of the three avenues. The court rejected the defendants' claim that the road commission had formally or informally accepted the dedication by its incorporation of the avenues into the county road system by resolutions passed in 1937 and 1940 pursuant to 1931 PA 130, a resolution in 1953, and the filing of notices of encroachment. Defendant Department of Commerce appealed (Docket No. 144762) and various other defendants, including Jeffrey D. Bertl and William A. Harrington, also appealed (Docket No. 144998).

Peter and Pauline Apostile and others, who own property located

REFERENCES

Am Jur 2d, Dedication §§ 22-26, 41-56, 67-69.

Dedication: acceptance of some of streets, alleys, and the like appearing on plat as acceptance of all. 32 ALR2d 953.

Revocation or withdrawal of dedication by grantees or successors in interest of dedicator. 86 ALR2d 860.

Private improvement of land dedicated but not used as street as estopping public rights. 36 ALR4th 625.

in the Almeda Beach Subdivision, Gerrish Township, Roscommon County, brought an action in 1989 in the Roscommon Circuit Court against Gerrish Township, Roscommon County, and others, seeking the vacation of the platted but unimproved portion of Don M. Boulevard that is contiguous to their respective properties. The plaintiffs also sought a declaration that they had extinguished through adverse possession any easement interests held in the boulevard by other property owners in the subdivision that was platted in 1907. The trial court, Carl L. Horn, J., dismissed the adverse possession claim, but granted the request for vacation, opining that neither the township nor the road commission had accepted the offer of dedication pertaining to the boulevard. The Department of Commerce appealed (Docket No. 144763), and various other defendants, including Martin Schmidt and Stanley T. Brockway, also appealed (Docket No. 144999).

Isabelle M. Ziola, who owns property in the Whittington Park Subdivision, brought an action in 1991 in the Roscommon Circuit Court against Gerrish Township, the Roscommon County Road Commission, and others, seeking the vacation of a portion of Oak Avenue and a declaration that she had acquired title to the property by adverse possession. The court, Michael J. Matuzak, J., rejected the adverse possession claim, then, in an exercise of equitable powers, quieted title in Ziola to the land occupied by her cottage and outbuildings to the extent that the structures encroached on Oak Avenue as originally platted. The court also quieted title in Gerrish Township to a portion of the real property, the use of which was acquired by the road commission pursuant to an agreement in 1954 between Ziola's predecessors in interest and the board of road commissioners. Ziola appealed (Docket No. 154036).

Randolph P. and Cynthia A. Luck and others, who own property in the Michigan Central Park Boulevard Subdivision, Third Addition, Lyon Township, Roscommon County, platted in 1901, brought an action in 1992 in the Roscommon Circuit Court against Lyon Township, the Roscommon County Road Commission, and others, seeking the vacation of the platted but unimproved portion of Michigan Central Park Boulevard contiguous to their property and a declaration that they had extinguished any easement interests held in the boulevard by other property owners in the subdivision. The court, Carl L. Horn, J., dismissed the adverse possession claim and rejected the vacation request, opining that the road commission had accepted the offer of dedication relating to, and had exercised jurisdiction

over, the boulevard. The plaintiffs appealed (Docket No. 157571).

The appeals were consolidated by the Court of Appeals.

The Court of Appeals *held:*

1. An offer to dedicate remains open until the dedicator, or the dedicator's successors in interest, put the land subject to the dedication to a use inconsistent with the idea that the offer remains open.

2. In the context of a dedication of land to use as a public way, it is not necessary to the acceptance that every street should be opened immediately when platted. Absent a withdrawal of the offer of dedication, the right to accept the offer ordinarily continues until public necessity requires the opening and use of a public way.

3. The offers to dedicate in these appeals did not automatically lapse after the expiration of fifteen years, MCL 600.5801; MSA 27A.5801. The offers remained open to acceptance by competent public authorities until public necessity required the opening and use of the roadways, absent withdrawal of the offers as evidenced by acts undertaken by the dedicator, or those claiming through the dedicator, that were hostile to the proposed public way and that demonstrated an intent to revoke the offers of dedication.

4. The dedication in a plat of a public way may be accepted by the public by: formal resolution; expenditure of public money for repair, improvement, and control of all or part of the roadway; public use; or the exercise of authority over the parcel by some ordinary ways of improvement or regulation.

5. The action of the Roscommon County Board of Road Commissioners, by its resolution of April 2, 1937, pursuant to 1931 PA 130, with the exception of Docket No. 154036, may constitute a formal acceptance of the offers of dedication of the avenues and boulevards in question and, thereby, may effectuate the creation of public ways, assuming that the resolution was adopted while the offers to dedicate remained open.

6. In Docket Nos. 144762 and 144998, the trial court committed clear error in finding that the road commission failed to make a timely acceptance of the offer of dedication as it pertained to Newman, Walnut, and Chestnut Avenues. The road commission's 1937 resolution constituted a timely formal acceptance of the dedication before any actions sufficient to constitute a withdrawal of the offer were taken by those individuals owning land adjacent to the avenues.

7. In Docket Nos. 144763 and 144999, the trial court erroneously ordered the vacation of the boulevard. The plaintiffs did

not undertake actions with regard to the boulevard before the adoption of the 1937 resolution that was contrary to the idea that the public had rights in the boulevard. The offer of dedication remained open for acceptance at the time of the adoption of the formal resolution in 1937 and the resolution constituted a timely formal acceptance of the offer of dedication.

8. In Docket No. 157571, the trial court correctly concluded that the road commission timely accepted the offer of dedication with regard to the boulevard. The offer of dedication was not withdrawn before the road commission's adoption of the formal resolution in 1937.

9. In Docket No. 154036, the trial court did not err in exercising its equitable powers to quiet title in each party to the property that each occupied pursuant to the 1954 agreement between the road commission and Ziola's predecessors in interest. The easement of back-lot owners in Oak Avenue was extinguished by the trial court's grant of quiet title to Ziola and the township to the property possessed by each under the parties' 1954 settlement agreement and by the road commission's construction of a road over the property it received in the agreement.

Docket Nos. 154036 and 157571, affirmed; Docket Nos. 144762, 144763, 144998, and 144999, reversed.

1. DEDICATION — PUBLIC USE — ACCEPTANCE.

A dedication of land to public use cannot be accomplished without a clear intent to dedicate on the part of the property owner and an acceptance by a competent authority; once a dedication is complete, neither the original dedicator nor a successor in interest can revoke or withdraw the dedication.

2. DEDICATION — PUBLIC USE — ACCEPTANCE — WITHDRAWAL OF OFFER.

An offer to dedicate land to public use remains open until the dedicator or successors in interest put the land subject to the dedication to a use inconsistent with the idea that the offer remains open; once the dedicator or successors engage in an act or acts hostile to the proposed public use, the offer is deemed withdrawn and cannot be accepted thereafter.

3. DEDICATION — PUBLIC USE — ACCEPTANCE — WITHDRAWAL OF OFFER.

Absent a withdrawal of an offer to dedicate land to use as a public way, the right to accept the offer ordinarily continues until public necessity requires the opening and use of a public

way; it is not necessary to the acceptance that every street should be opened immediately when platted.

4. DEDICATION — PUBLIC WAYS — ACCEPTANCE.

    The dedication in a plat of a public way is ineffective unless accepted by the public; acceptance may be: formal by resolution; informal through the expenditure of public money for repair, improvement, and control of all or part of the roadway; informal through public use; or informal through the exercise of authority over the parcel by some ordinary ways of improvement or regulation.

*Law Offices of William L. Carey* (by *William L. Carey, Pamela Stefan, Robert K. Huber,* and *Roberta L. Eckert*), for the plaintiffs.

*Hess & Hess, P.C.* (by *Robert A. Hess*), for Gerrish Township.

*Douglas Dosson,* for Lyon Township.

*James R. Deamud,* for the Roscommon County Road Commission.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Thomas J. Emery,* Assistant in Charge, and *James E. Riley,* Assistant Attorney General, for the state defendants.

*William H. Horton,* for certain individual defendants in Docket Nos. 144762, 144998, 144763, 144999, and 157571.

Before: NEFF, P.J., and MURPHY and M. R. STEMPIEN,* JJ.

NEFF, P.J. These consolidated appeals arise from four distinct actions brought by private individuals, who own real property on or near the shoreline of Higgins Lake, to secure the vacation of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

various platted but unimproved "paper streets" that abut their respective properties. In Docket Nos. 144762 and 144998, the State of Michigan and various fee or beneficial title holders of real property located in the Whittington Park Subdivision, Gerrish Township, Roscommon County, appeal as of right from a judgment that vacated portions of Newman, Walnut, and Chestnut Avenues. In Docket Nos. 144763 and 144999, the State of Michigan and various fee title holders of real property located in the Almeda Beach Subdivision, Gerrish Township, Roscommon County, appeal as of right from a judgment that vacated a portion of Don M. Boulevard. In Docket No. 154036, plaintiff Isabelle M. Ziola, a fee title holder of real property located in the Whittington Park Subdivision, appeals as of right from an order that denied her request to vacate a portion of Oak Avenue, but that quieted title in Ziola to the real property occupied by her home and outbuildings to the extent that those structures encroached upon the avenue as originally platted. Finally, in Docket No. 157571, plaintiffs Luck appeal as of right from a judgment that rejected their request for the vacation of a portion of Michigan Central Park Boulevard, which is located in the Michigan Central Park Boulevard Subdivision, Third Addition, Lyon Township, Roscommon County.

I

A

Plaintiffs Kraus, Kutz, Stoye, and Mueller own lakefront property in the Whittington Park Subdivision, which was platted in 1903. Plaintiffs' property abuts the platted but unimproved portions of Newman, Walnut, or Chestnut Avenues that run

east from the platted and improved Burrows Avenue to the shoreline of Higgins Lake.

The portion of Newman Avenue that is the subject of the instant appeal separates plaintiff Stoye's property, which is located immediately adjacent to and north of the avenue, from plaintiff Mueller's property, which is located immediately adjacent to and south of the avenue. The avenue consists of level ground covered with grass that is maintained as a lawn by the Stoyes. Trees with trunks measuring from six inches to two feet in diameter stand in the avenue, as do ornamental trees planted by the Stoyes. The avenue terminates where the ground abruptly drops ten to fifteen feet to the rocky shoreline below. Neither Gerrish Township nor the Roscommon County Road Commission has expended any resources to open the avenue to either pedestrian or vehicular traffic as evidenced by their failure to remove trees from the avenue or grade or pave the avenue. Nor have these governmental units added such improvements as storm drains, curbs, or ditches.

While public improvements have not been made to the avenue, improvements made to the private property abutting both sides of the avenue have encroached onto and across the avenue over the years. In 1931, a fence existed approximately eight to ten feet east of Burrows Avenue and ran parallel to that avenue from the Stoyes' property to Mueller's property. This fence was replaced in 1962 with another fence. The Stoyes intended the fence to serve as a barrier to public access to the avenue. Mueller, on the other hand, only intended the fence to beautify the property. Beneath this fence, Frederick Stoye's father constructed a concrete curb that runs parallel to Burrows Avenue. Further, Mueller's garden house encroaches four feet into the southeast corner of the avenue. The

garden house was constructed in 1959. On the southwest corner of the avenue sits a portion of Mueller's concrete walkway. A concrete and cobblestone pillar stands on either side of the walkway; only the pillar standing to the north of the walkway encroaches upon the avenue, however.

The portion of Walnut Avenue that is in question exists in a natural state similar to that of Newman Avenue. Walnut Avenue is wooded with oak and pine trees. Some of the trees have trunks measuring eighteen inches in diameter and stand thirty to forty feet tall. The avenue terminates on a plateau that rises between six and fifteen feet above the shoreline, which is composed of glacial debris. Plaintiffs Kraus and Kutz, who own property abutting Walnut Avenue, maintain the avenue by raking leaves, removing fallen branches and twigs, mowing the grass, planting and trimming trees, and removing poison ivy that grows near the shoreline. Neither the township nor the road commission has expended monies or manpower to open, improve, or maintain the avenue.

Also like Newman Avenue, Walnut Avenue has been encroached upon by the adjoining property owners. A cobblestone and cement planter stands in the avenue. The year 1925 is etched in the cement at the base of the structure. However, the most prominent features appearing in the avenue are an eight-foot-tall cement and cobblestone barbecue pit and a cement picnic table with a cement bench. Several cement steps are located near the barbecue. These structures were built by plaintiff Kutz and his father in 1942. Further, in the late 1930s or early 1940s, a wire fence with a wooden gate ran the length of Walnut Avenue, bisecting it, from Burrows Avenue to the lake. The fence slowly rotted away and ceased to exist by the 1950s or 1960s.

Chestnut Avenue, like Newman and Walnut Avenues, runs through stands of pine and oak; its surface is covered with grass. The avenue terminates on a plateau that rises approximately fifteen feet above the level of the lake. The shoreline is covered with glacial debris and undergrowth. The avenue has never been opened for pedestrian or vehicular traffic by the township or the road commission. Further, neither governmental authority has expended resources to improve or maintain the avenue.

Plaintiff Kraus owns property that is immediately adjacent to and north of Chestnut Avenue. His neighbors across the avenue and to the south have made numerous encroachments onto the avenue. Their home encroaches eight feet into the avenue. Additionally, the neighbors built a split-rail fence in the 1970s that runs from Burrows Avenue to the lake, bisecting the avenue. The split-rail fence replaced a badly deteriorated woven-wire fence. The neighbors' driveway and landscaping also encroach onto the avenue.

Plaintiffs Kraus, Kutz, Stoye, and Mueller commenced an action in the circuit court in 1989 that sought the vacation of those portions of Newman, Walnut, and Chestnut Avenues that are contiguous to their respective properties. Plaintiffs also sought a declaration that they had extinguished through adverse possession any easement interests held in the avenues by the other property owners in the platted subdivision.

The trial court dismissed plaintiffs' adverse possession claim, but granted their vacation request, opining that neither the township nor the road commission had accepted the dedication of the three avenues and, therefore, that vacation of the requested portions of the avenues was appropriate. In reaching its decision to vacate the avenues, the

trial court rejected defendants' claim that the road commission had formally or informally accepted the dedication of the avenues to public use as evidenced, in part, by its incorporation of the avenues into the county road system by resolutions passed on April 2, 1937, and April 16, 1940, pursuant to 1931 PA 130, commonly referred to as the McNitt act, repealed by 1951 PA 51, and by its March 16, 1953, resolution that "formally acknowledge[d] and confirm[ed] and reaffirm[ed]" the road commission's prior taking over as county roads "all streets, roads and alleys, whether named or not, and whether called avenues, boulevards, courts, streets or alleys," and by its filing of notices of encroachment with the county registrar of deeds and serving such notices upon property owners who placed encroachments on the unimproved portions of platted ways.

B

Plaintiffs Apostile, Grinell, Fritz, Fryfogle, and Rimarcik hold fee interests in parcels of real property located in Blocks 1 through 3 of the Almeda Beach Subdivision, which was platted in 1907. Plaintiffs' parcels face Higgins Lake, but are separated from the lake by the platted but unimproved Don M. Boulevard, which runs parallel to the shoreline.

The boulevard extends across irregular, grass-covered terrain that, at points, slopes steeply to the shoreline. Ornamental trees dot the boulevard, as do trees with trunks measuring one foot in diameter and standing thirty to seventy feet tall. No actions have been taken and no money has been spent by either the township or the road commission to improve the boulevard for pedestrian or vehicular traffic. Nor has either govern-

mental authority removed the numerous encroachments placed on the boulevard by plaintiffs. These encroachments include an underground sprinkler system, several pumps to extract water from Higgins Lake, fire pits, sea walls, a flag pole, a split-rail fence, a swing, a bench, landscaping, a wooden deck, portions of outbuildings, a cement slab, sidewalks, and stairs. Some of these encroachments have existed since the 1950s. The road commission has improved, however, First through Fourth Streets, including those portions of the streets that intersect and overlap the boulevard.

Plaintiffs Apostile, Grinell, Fritz, Fryfogle, and Rimarcik commenced a circuit court action in 1989 that sought the vacation of the boulevard along the Higgins Lake shoreline, in a northerly direction from Fourth Street. Plaintiffs also sought a declaration that they had extinguished through adverse possession any easement interests held in the boulevard by other property owners in the subdivision. The trial court dismissed the adverse possession claim, but granted the request for vacation of the boulevard, opining that neither the township nor the road commission had accepted the offer of dedication pertaining to the boulevard.

C

Plaintiff Ziola holds fee title to a parcel of real property described as Lot 1, Block 2 of the Whittington Park Subdivision. Ziola's cottage, fence, and outbuildings rest within and encroach upon the easterly forty-five feet of Oak Avenue as the avenue runs north from Robbins Avenue to the Higgins Lake shoreline. The cottage has sat in its present location for more than fifty years.

The road commission commenced a circuit court action in December 1952 against Ziola's predeces-

sors in interest to force the removal of the cottage from Oak Avenue. The trial court dismissed the action in 1954 after the parties reached a settlement. In forbearance of the road commission's removal of the cottage from the avenue, the parties agreed that the road commission could, and subsequently did, construct a lateral access to Higgins Lake over Lot 1 and the westerly five feet of Oak Avenue as platted. An indenture reflecting this agreement was filed with the registrar of deeds.

Ziola filed a circuit court action in 1991, pursuant to which she sought the vacation of that portion of Oak Avenue that runs north from Robbins Avenue to the shoreline. Ziola also sought a declaration that she had acquired title to the avenue by adverse possession and damages arising out of property tax assessments.

The trial court tried Ziola's action using stipulated facts and various exhibits. The trial court rejected Ziola's adverse possession claim. Then, in an exercise of equitable powers, the court quieted title in Ziola to the land occupied by her cottage and outbuildings to the extent that the structures encroached on Oak Avenue as originally platted. The court further quieted title in Gerrish Township to a portion of the real property, the use of which was acquired by the road commission pursuant to the 1954 agreement between Ziola's predecessors in interest and the Roscommon County Board of Road Commissioners.

D

Plaintiffs Luck own parcels of real property described as Lots 1 through 4, Block 143 of the Michigan Central Park Boulevard Subdivision, Third Addition, which was platted in 1901. The

platted but unimproved Michigan Central Park Boulevard, which parallels the shoreline, separates plaintiffs' property from the lake.

Michigan Central Park Boulevard contains a number of mature trees, some of which have trunks measuring two to five feet in diameter. Scrub growth also exists in the boulevard, as do manicured lawns and flower beds. Some portions of the boulevard no longer exist as a result of shoreline erosion. Neither Lyon Township nor the road commission has expended resources to open the boulevard to pedestrian or vehicular travel or to maintain or improve the boulevard. However, in the 1950s, the road commission did survey the boulevard and, as a result of the survey, did mail encroachment notices to offending owners of property that abutted the boulevard. Plaintiffs' predecessor in interest received such a notice in August 1959. A portion of a concrete slab behind plaintiffs' dwelling and a concrete, stepped walkway, which runs from plaintiffs' property towards the shoreline, encroach upon the boulevard.

Plaintiffs Luck filed an action in the circuit court in 1992 that sought the vacation of the boulevard and a declaration that they had extinguished any easement interests held in the boulevard by other property owners in the subdivision. The trial court dismissed the adverse possession claim. Further, the court rejected plaintiffs' vacation request, opining that the road commission had accepted the offer of dedication relating to, and had exercised jurisdiction over, the boulevard.

II

A dedication is an appropriation of land to a public use by the owner. *Rice v Clare Co Rd Comm,* 346 Mich 658, 664; 78 NW2d 651 (1956). A

dedication cannot be accomplished without a clear intent to dedicate on the part of the property owner, as well as an acceptance by the public. *Lee v Lake,* 14 Mich 12, 18 (1865). The acceptance of an offer to dedicate land to public use is essential to a completed dedication and to the creation of a public highway. *Field v Village of Manchester,* 32 Mich 279, 281 (1875); *West Michigan Park Ass'n v Dep't of Conservation,* 2 Mich App 254, 264-265; 139 NW2d 758 (1966). Once a dedication is complete, neither the original dedicator nor the dedicator's successors in interest can revoke or withdraw the dedication. *Id.,* p 266; anno: *Revocation or withdrawal of dedication by grantees or successors in interest of dedicator,* 86 ALR2d 860, 877. Because no land can become public without an acceptance of the offer to dedicate by a competent authority, plaintiffs' right to vacation of the various platted but unimproved avenues and boulevards at issue in these appeals depends on whether the dedication of these avenues and boulevards was accepted by the county in a timely manner.

A

Plaintiffs argue that an offer to dedicate cannot remain open after a lapse of a period sufficient to bar all actions for the recovery of lands under the statute of limitations, i.e., fifteen years, MCL 600.5801; MSA 27A.5801. Plaintiffs' argument rests on too narrow an interpretation of the case law, and, therefore, we reject the argument as unpersuasive.

Our Supreme Court enunciated the general rule governing the length of time an offer to dedicate remains open in the seminal case of *Wayne Co v Miller,* 31 Mich 447, 450 (1875), as follows:

> After what length of time such an offer must be
> regarded as withdrawn, circumstances may per-
> haps determine, but unless there were facts equiv-
> alent to a continuous renewal of the offer, it
> cannot be considered open after the lapse of a
> period of time sufficient to bar all actions for the
> recovery of lands under the statute of limitations.

The *Miller* rule indicates that an offer to dedicate
lapses automatically if not accepted within the
period sufficient to bar all actions for the recovery
of land. However, the rule announced in *Miller* is
conditional. Automatic lapse occurs *only if* there
are no facts from which a continuous renewal of
the offer can be inferred. *In re Petition of Bryant,*
323 Mich 424, 434; 35 NW2d 371 (1949).

Since the enunciation of the *Miller* rule, our
Supreme Court has opined that an offer to dedi-
cate remains open until the dedicator, or the
dedicator's successors in interest, put the land
subject to the dedication to a use inconsistent with
the idea that the offer remains open. Once the
dedicator, or those claiming through the dedicator,
engage in an act or acts hostile to the proposed
public use, the offer is deemed withdrawn and
cannot be accepted thereafter. *Vivian v Roscom-
mon Co Bd of Rd Comm'rs,* 433 Mich 511, 518; 446
NW2d 161 (1989); *In re Vacation of Cara Avenue,*
350 Mich 283, 289-290; 86 NW2d 319 (1957); *In re
Petition of Bryant, supra,* p 433; *White v Smith,* 37
Mich 291, 295-296 (1877). See also *Eyde Bros De-
velopment Co v Roscommon Co Bd of Rd Comm'rs,*
161 Mich App 654, 664; 411 NW2d 814 (1987).

In the context of a dedication of land to use as a
public way, it is not necessary to the acceptance
that every street should be opened immediately
when platted. Instead, absent a withdrawal of the
offer of dedication, the right to accept the offer
ordinarily continues until public necessity requires

the opening and use of a public way. *Olsen v Village of Grand Beach,* 282 Mich 364, 372-373; 276 NW 481 (1937); *Elias Bros, Inc v Hazel Park,* 1 Mich App 30, 34; 133 NW2d 206 (1965).

Accordingly, we conclude that the offers to dedicate in these appeals did not automatically lapse after the expiration of fifteen years. We further conclude that the offers remained open to acceptance by competent public authorities until public necessity required the opening and use of the roadways, absent withdrawal of the offers as evidenced by acts undertaken by the dedicator, or those claiming through the dedicator, that were hostile to the proposed public use and that demonstrated an intent to revoke the offers of dedication.

B

As previously explained, a dedication in a plat of a public way is ineffective unless accepted by the public. *Vivian, supra,* pp 517-518. Acceptance may be: (1) formal by resolution; (2) informal through the expenditure of public money for repair, improvement, and control of all or part of the roadway; (3) informal through public use, *Eyde Bros Development Co, supra,* p 667; or (4) informal through the exercise of authority over the parcel by some ordinary ways of improvement or regulation, *Nelson v Roscommon Co Rd Comm,* 117 Mich App 125, 130; 323 NW2d 621 (1982).

The Roscommon County Board of Road Commissioners undertook the following action by formal board resolution at its April 2, 1937, board meeting:

Whereas, the McNitt-Holbeck-Smith Bill, being Act 130 of the Public Acts of 1931, requires that all dedicated streets and alleys in recorded plats

outside of incorporated villages or cities be taken over on April 1st, 1937, by County Road Commissions in Michigan, for maintenance by said County Road Commissions,

Therefore, be it resolved, that the Roscommon County Road Commission take over for County Maintenance, under the McNitt-Holbeck-Smith Bill, being Act 130, P.A. 1931, all dedicated streets and alleys in recorded plats within Roscommon County, outside of the Village of Roscommon, that being the only incorporated City or Village within Roscommon County, for a total mileage of such streets and alleys of 170,236 miles.

The appeals before us, with the exception of Docket No. 154036, raise the question whether the action of the Roscommon County Board of Road Commissioners, by its resolution of April 2, 1937, pursuant to the McNitt act,[1] 1931 PA 130, repealed by 1951 PA 51, may constitute a formal acceptance of the offers of dedication of the avenues and boulevards in question and, thereby, may effectuate the creation of public ways. We answer this question in the affirmative, assuming, of

---

[1] The relevant portion of the McNitt Act provided:

On or before April first, 1932, the board of county road commissioners in each of the several counties of the state shall take over and incorporate into the county road system, 20 per cent of the total township highway mileage so determined and fixed by the state highway commissioner in each township of their respective counties. Thereafter each such board of county road commissioners shall, on April first of each succeeding year, take over and incorporate into their county road system, an additional 20 per cent of such township highway mileage until the entire township highway mileage in all of the townships of each of such counties has been taken over and made a part of the county highway systems, and in the fifth year shall include all additional township highway mileage as re-certifiedpp [sic] by the state highway commissioner. In the year next following the taking over of all such highways all dedicated streets and alleys in recorded plats and outside of incorporated cities and villages shall be taken over and become county roads. [1931 PA 130, § 2; 1948 CL 247.2.]

course, that the resolution was adopted while the offers to dedicate remained open. We reach this conclusion in reliance on our Supreme Court's decisions in *In re Vacation of Cara Avenue, supra,* and *Rice, supra.*

Our Supreme Court was asked to resolve a dispute in *In re Vacation of Cara Avenue* concerning public rights to the use of the "stub end" of Cara Avenue, where the avenue ended at the shoreline of Diamond Lake, in Cass County. Cara Avenue was dedicated to the public use by the filing and recording of the plat of Sandy Beach. By "formal resolution of the Cass county board of road commissioners, dated March 26, 1937, the county, under the McNitt act [1948 CL 247.2], took over the roads in the Sandy Beach plat, including the west end or disputed portion of Cara avenue." *Id.,* p 286. Subsequently, various adjacent lakefront-lot owners in the subdivision petitioned for the vacation of the disputed portion of Cara Avenue. *Id.,* p 285. The circuit court entered a decree favorable to the adjacent property owners, opining that there had been no acceptance by the public of the 1909 offer to dedicate the west end of Cara Avenue and that the offer should be treated as withdrawn before 1937. Accordingly, the circuit court concluded that the disputed portion of Cara Avenue was not integrated into the county road system by the formal resolution of acceptance of the county road commissioners. *Id.,* p 288. The circuit court's ruling placed squarely before our Supreme Court the question whether the offer to dedicate the west end of Cara Avenue had been accepted validly. *Id.*

The Supreme Court began its discussion of the acceptance question by setting forth a statement of relevant and undisputed facts:

(1) There was a formal dedication of the subject property "to the use of the public" on August 16, 1909;

(2) The plat containing the dedication was approved by the Penn township board on October 2, 1909, and recorded October 25, 1909;

(3) There is no specific withdrawal of the offer to dedicate by the original grantors shown in this record at any time; nor is there any evidence of withdrawal by use by the grantors adverse to the proposed public use;

(4) On March 26, 1937, the board of county road commissioners took over the subject area as a public road by formal resolution;

(5) By 1919 the main portion of Cara, not including the disputed area, had been graveled, and in 1939 it was paved by the county. [*Id.,* p 289.]

On the basis of this factual recitation, the Court concluded that the dedication had been accepted by the public authorities through the creation and recording of the plat in a manner consistent with the Michigan plat act, then referenced as 1948 CL 560.50 (Stat Ann 1953 Rev § 26.480), and through the approval of the plat. *Id.,* pp 289, 290. However, more important to our resolution of the question before us is the Court's alternative ground for concluding that the offer to dedicate the disputed portion of Cara Avenue was formally accepted. The Court opined:

We believe that even if the approval of the plat is held not conclusive, the offer to dedicate the west portion of Cara avenue must be held to have been a continuing one up to formal acceptance by the county in 1937. [*Id.,* p 291.]

The only formal action taken by the county commissioners in 1937 and, therefore, the only formal action that the Court could have been referencing

as sufficient to constitute a formal acceptance of the offer to dedicate, was the formal resolution incorporating the disputed portion of Cara Avenue into the county road system pursuant to the McNitt Act. *Id.,* pp 286, 289, 291.

In *Rice,* lakefront-lot owners in the Tompkins Resort situated on the north shore of Lake George, in Clare County, sought to prevent "back lot" owners from using the platted but unimproved Beach Street to gain access to the lake. The trial court ruled adversely to the lakefront-lot owners. *Id.,* pp 661-662. On appeal, those lot owners urged our Supreme Court to conclude that there was no acceptance, by the county, of the offer of dedication of Beach Street. *Id.,* p 663. The Court rejected the arguments advanced by the lakefront-lot owners and, after quoting the text of an April 3, 1937, resolution of the Clare County Road Commission, pursuant to which the commission incorporated the streets contained in the plat of the Tompkins Resort into the county road system under the McNitt Act, *id.,* pp 663-664, opined:

> We agree with the trial court that the resolution of the county road commission in 1937 constituted a valid acceptance of the offer to dedicate. . . .
> Under such circumstances the failure immediately to make expenditures of public moneys thereon for repair or improvement, which measures normally evidence an informal acceptance was immaterial. The dedication was complete upon acceptance. [*Id.,* pp 665-666.]

On the basis of the foregoing exposition, we conclude that both *In re Vacation of Cara Avenue* and *Rice* stand for the proposition that a "McNitt Act acceptance" is sufficient, in and of itself, to constitute an acceptance of an offer of dedication

that has remained open and, thereby, to complete the dedication and create an irrevocable public interest in a roadway. See also *In re Petition of Bryant, supra,* pp 433-434. Were we not bound by the principle of stare decisis, *Felsner v McDonald Rent-A-Car, Inc,* 193 Mich App 565, 569; 484 NW2d 408 (1992), we would nevertheless reach the same conclusion because we believe *In re Vacation of Cara Avenue* and *Rice* to have been soundly decided.

The law of dedication, like the law of contract, is the law of offer and acceptance. A dedication, like a contract, requires both an offer and an acceptance to create legally binding rights. Compare *Field, supra,* with *Mathieu v Wubbe,* 330 Mich 408, 412; 47 NW2d 670 (1951). Under the principles governing contracts, an acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for the purpose. *Wilkinson v Lanterman,* 314 Mich 568, 573; 22 NW2d 827 (1946); *Ludowici-Celadon Co v McKinley,* 307 Mich 149, 153; 11 NW2d 839 (1943).

Similarly, courts, when faced with the question whether a completed dedication exists, look to the record for evidence of an act or acts undertaken by a public body that manifests a voluntary assumption of jurisdiction over the dedicated way with the intent to retain the way for the proposed public use. See, e.g., *Eyde Bros Development Co, supra,* p 667; *Nelson, supra,* p 130. We can think of no more certain and positive conduct on the part of a competent public body evincing its acceptance on the behalf of the public of an offer of dedication than the adoption of a formal resolution pursuant to which the public body agrees to exercise juris-

diction over the dedicated parcel in a manner consistent with the proposed public use.

In reaching this conclusion, we are careful to distinguish the appeals before us from those cases that concern questions of statutory construction and that address whether the McNitt act empowered a county road commission to incorporate a roadway into a county road system where the roadway subject to incorporation traversed private property and was neither a township road nor a dedicated street or alley within the meaning of the McNitt act at the time of incorporation. See, e.g., *Pulleyblank v Mason Co Rd Comm,* 350 Mich 223, 230; 86 NW2d 309 (1957); *Missaukee Lakes Land Co v Missaukee Co Rd Comm,* 333 Mich 372, 376-378; 53 NW2d 297 (1952). The question before this Court is not whether the avenues and boulevards at issue constituted either township roads or dedicated streets within the meaning of the McNitt act and, therefore, whether already existing public ways could become county roads as a result of an exercise of the power granted to the county road commissions by the act. Instead, the question before this Court is whether the avenues and boulevards at issue became public ways as the result of a timely acceptance of the offers of dedication. In this latter context, the existence of a formal resolution pursuant to the McNitt act serves only as evidence of the receipt of the dedicated way by a public body with the intent of retaining the dedicated way on behalf of the public for the proposed public use.

We acknowledge that our decision in these cases conflicts with the decision of this Court in *Eyde Bros Development Co, supra.* To the extent that *Eyde Bros Development Co* stands for the proposition that an offer of dedication may not be formally accepted by a McNitt act resolution, stand-

ing alone, we believe that *Eyde Bros Development Co* was wrongly decided. We hold this belief for two reasons. First, we believe that the decision in *Eyde Bros Development Co* is premised on an erroneous understanding of our Supreme Court's decisions in *In re Vacation of Cara Avenue* and *Rice,* as evidenced by our previous discussion of those cases. Second, we believe that the Court in *Eyde Bros Development Co* failed to make the crucial distinction between the issue concerning offer and acceptance and the issue whether the roadways in question in *Eyde Bros Development Co* were dedicated streets within the meaning of the McNitt act. This failure led to the Court's application of the principle that the McNitt act does not allow the incorporation of a private road into a county road system in a context in which the principle was not meant to apply. See, e.g., *Missaukee Lakes Land Co, supra.*

### C

We now address plaintiffs' right to vacation of the avenues and boulevards in question, guided by our understanding of the principles governing the dedication of public roadways.

In Docket Nos. 144762 and 144998, we find that the trial court erroneously ordered the vacation of Newman Avenue. As early as 1931, one of the adjacent landowners constructed a fence that blocked access to the avenue. However, no other evidence exists to establish that the avenue was put to a use inconsistent with the idea that the public held any rights in the avenue. The construction of the fence was not alone sufficient to constitute a withdrawal of the offer of dedication. *Vivian, supra,* pp 518-519. Accordingly, we find that the trial court committed clear error when it

found that the road commission failed to make a timely acceptance of the offer of dedication as it pertained to Newman Avenue. *Michigan Nat'l Bank & Trust Co v Morren,* 194 Mich App 407, 410; 487 NW2d 784 (1992).

We also find that the trial court erroneously concluded that the road commission failed to accept the offers to dedicate Walnut and Chestnut Avenues in a timely manner. The road commission's 1937 McNitt act resolution constituted a timely formal acceptance of the dedications of Walnut and Chestnut Avenues. Before the adoption of this resolution, the record indicates that the only action taken by an adjoining landowner with regard to Walnut Avenue was the construction of a cement and cobblestone planter in the avenue. We find this action insufficient in character to constitute a withdrawal of the offer of dedication. *Vivian, supra.* Further, with regard to Chestnut Avenue, the record discloses no action being undertaken by any adjacent landowner that could be considered inconsistent with the idea of public ownership of the avenue before the adoption of the 1937 resolution. Accordingly, we find that a timely acceptance of the offer to dedicate the avenues was made by the road commission where the commission adopted its 1937 resolution before any actions sufficient to constitute a withdrawal of the offer were taken by those individuals owning land adjacent to the avenues.

In Docket Nos. 144763 and 144999, we find that the trial court erroneously ordered the vacation of Don M. Boulevard. The record is devoid of any evidence that plaintiffs, or their predecessors in interest, undertook any actions with regard to the boulevard before the adoption of the 1937 resolution that would be considered contrary to the idea that the public had rights in the boulevard. Ac-

cordingly, the offer of dedication remained open for acceptance at the time of the adoption of the formal resolution and the resolution constituted a timely formal acceptance of the offer of dedication.

Finally, in Docket No. 157571, we find that the trial court correctly concluded that the road commission timely accepted the offer of dedication with regard to Michigan Central Park Boulevard. The record contains no evidence from which it can be determined that the offer to dedicate had been withdrawn before the road commission's adoption of the 1937 McNitt Act resolution.

D

In Docket No. 154036, plaintiff Ziola argues that the trial court erred in failing to address whether the offer to dedicate Oak Avenue was either formally or informally accepted by a public body in a timely manner. Ziola's claimed error is unsupported in the record. Our review of the lengthy written opinion of the trial court discloses that the trial court twice opined that neither Gerrish Township nor the road commission had timely accepted the offer to dedicate the avenue.

But more importantly, our review of the trial court's opinion discloses that the court, after finding that the offer of dedication had not been accepted, exercised its equitable powers to quiet title in each party to the property that they occupied pursuant to the 1954 agreement. Ziola failed to provide this Court with a rationale to overturn the trial court's exercise of its equitable power, which served as the basis of the court's ruling. We decline to search for such a rationale, *Mitcham v Detroit,* 355 Mich 182, 203; 94 NW2d 388 (1959), given the equitable nature of actions to determine interests in land, MCL 600.2932(5); MSA

27A.2932(5); *McKay v Palmer,* 170 Mich App 288, 293; 427 NW2d 620 (1988).

### III

In Docket Nos. 144762, 144763, 144998, and 144999, defendants argue that the trial court erred in failing to recognize that the back-lot owners in the subdivisions retained easement rights in the vacated portions of Newman, Walnut, and Chestnut Avenues and of Don M. Boulevard and in failing to protect those rights in the judgments of vacation. We find that our determination that Newman Avenue, Walnut Avenue, Chestnut Avenue, and Don M. Boulevard were erroneously vacated renders our consideration of this issue, with reference to these public ways, moot. *Crawford Co v Secretary of State,* 160 Mich App 88, 93; 408 NW2d 112 (1987).

Further, in regard to Docket No. 154036, we find that the easement in Oak Avenue was extinguished by the trial court's grant of quiet titles to Ziola and Gerrish Township to the property possessed by each under the 1954 settlement agreement and the road commission's construction of a lateral access road to Higgins Lake over Lot 1 and the westerly five feet of Oak Avenue as platted. See, e.g., *Waubun Beach Ass'n v Wilson,* 274 Mich 598, 609-610; 265 NW 474 (1936); *Birch Forest Club v Rose,* 23 Mich App 492, 497; 179 NW2d 39 (1970); 3 Powell, Real Property, ¶ 422, p 34-245.

### IV

We reverse in Docket Nos. 144762, 144763, 144998, and 144999, and affirm in Docket Nos. 154036 and 157571.